05 CV 7631

JUDGE CROTTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------
PAYLER CORP.                          )
                                      )
                    Plaintiff,        )
                                      )       Civil Action No.
        v.                            )
                                      )
HSH NORDBANK AG                       )
                                      )
                                      )
                    Defendant.        )
------------------------------------------------------
```

RECEIVED
AUG 2 9 2005
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiff Payler Corp. by its attorney Christopher J. McHattie, Esq. as and for its complaint against the Defendant HSH Nordbank AG, hereby alleges as follows:

1.    Plaintiff Payler Corp. (hereinafter "Payler") is a New Jersey corporation having an office and principal place of business at 237 West Parkway Pompton Plains NJ 07444.

2.    Upon information and belief, Defendant HSH Nordbank AG ("HSH Nordbank") is a corporation organized and existing under the laws of Germany and having an office and place of business at 230 Park Avenue, New York, NY 10169.

## JURISDICTION AND VENUE

3.    The causes and separate counts set forth hereinbelow arise under 15 U.S.C. §1051 et. seq., the New York General Business Law, and the New York Anti-Dilution Statute, and jurisdiction and venue are founded upon Title 28 U.S.C. 1121, 1331, 1338, 1391, 2201 and 2202.

4.      Venue is proper in the United States District Court for the Southern District of New York because, upon information and belief, a substantial number of the events giving rise to these claims occurred in this District.

## BACKGROUND

5.      Payler has conducted business as a publisher of and data source for mortgage and consumer loan information since 1979.

6.      Payler has become one of the nation's largest publishers of mortgage and consumer loan information and a primary source of data relating thereto for the banking industry.  Payler's clients include the media, Fortune 500 companies, lenders, mortgage shoppers, and state and Federal regulators including, but not limited to, Deutsche Bank, Some of its financial industry customers include, but are not limited to, AFL-CIO Union Privilege, American Banker, Bear Stearns, BlackRock Inc., Chase Home Mortgage, Citadel Group, Citibank N.A., Citibank Private Banking, Commonwealth Mortgage, Countrywide Home Loans, Credit Suisse First Boston, DataQuick, Dime Savings Bank, Federal National Mortgage Assoc. (Fannie Mae), Fidelity Investments, Fitch Ratings, Federal Home Loan Mortgage Corp. (Freddie Mac), Harley Davidson Financial, Hudson City Savings, Indy Mac, ING Bank, Lehman Brothers, Loansrc.com, Lomas & Nettleton Mortgage Bankers, Mavent, Inc., Metrocities Mortgage, Money Magazine, Morgan Stanley Credit Corp., Mortgage Bankers Assoc. of America, Mortgage By Internet.com, NEA Member Benefits, Ownit Mortgage Solutions, PNC Bank, Quicken Loans, RBS Greenwich Capital, Runzheimer International, ScotiaBank, SN Servicing Corp., State of New York Banking Department, The Web Loan.com, Thornburg Mortgage, Toronto Dominion Bank, UBS, US Trust, Willamette Realtors and Wingspan Bank.

2

7.     Payler's rate information is frequently found in prominent print publications including, but not limited to, The New York Times, the Wall Street Journal, Money magazine, American Banker, Smart Money, Seattle Times, Baltimore Sun, Newsweek, Consumer Reports, the USA Today, the Financial Times and Reuters

8.     Payler has developed a reputation for honesty and fair dealing. Every week since 1979, Payler has collected `home equity, auto, credit card, and other consumer finance` data from lenders and banks throughout the country. Every institution in Plaintiff's database is contacted directly, branch by branch, to obtain reliable data.

## PAYLER'S "HSH" SERVICE MARK

9.     Payler has used the mark "HSH" in connection with its financial publishing services since 1979.

10.     The HSH mark has been extensively and continually advertised and promoted by Payler within the United States for over twenty-five years. Payler has expended substantial amounts of time, effort, and money to ensure that the public associates the HSH mark exclusively with Payler and its services. Examples of Payler's widespread promotion of its HSH mark include numerous interviews and mentions in print, broadcast, and web media, as well as advertisements on its websites, and in its catalogs.

11.     In 1992, even before the creation of Internic, Plaintiff registered its www.hsh.com domain, Plaintiff being a pioneer in this space on the internet. Because of the substantial popularity and good will invested in the www.hsh.com website and the HSH mark with consumers, Payler uses the HSH mark to market other services, including, but not limited to its additional domains:

www.bankrates.com, www.loaninfo.com, www.loanrates.com and www.bestrates.com, as adjuncts
to its www.hsh.com domain.

12.     Through Payler's prominent usage of its HSH mark in an exclusive and continuous
manner for over twenty-five years, the HSH mark has acquired a high degree of consumer
recognition in the minds of the relevant public, and is now famous and serves uniquely to identify the
services provided by Payler.

13.     On February 10, 2004, Payler obtained federal trademark registration No. 2812720 for
the word mark "HSH" in the following classes; International Class 036 in connection with financial
information provided by electronic means, featuring interest rates, borrower and lending data and
financial calculation tools for borrowers, lenders and industry participants, International Class 35 in
connection with the dissemination of advertising for others via the Internet, and International Class
42 in connection with computer services, namely, hosting, designing and implementing web sites for
others on a computer server for a global computer network, and providing architectural design plans
via the Internet.

14.     Payler's federal trademark registration No. 2812720 is prima facie evidence of the
validity of the registration, Payler's ownership of the HSH mark, and its exclusive right to use the
HSH mark in commerce in connection with the services specified in the certificate of registration
under the provisions of 15 U.S.C. §1057(b) and provide constructive notice of Payler's claim of
ownership under 15 U.S.C. §1072.

## DEFENDANT'S WRONGFUL CONDUCT

15.     Long after Payler began using its HSH mark, and upon information and belief, after
April 23, 2003, Defendant HSH Nordbank began to utilize the mark "HSH Nordbank" in interstate

commerce for financial services, including, but not limited to, the provision of financial information on-line, via the internet, or via computer network and financial analysis and consultation services, financial forecasting, financial management, financial planning, financial portfolio management, financial research, money lending, investment fund transfer and transaction services, insurance services, namely, insurance administration agencies, brokerage, consultation and life insurance underwriting; banking services; credit services, namely credit agencies, credit bureaus, credit card services, credit consultation, credit rating, and credit reporting services; investment services, namely, investment advice, investment banking, investment brokerage, investment consultation, investment management and mutual fund investment; real estate and estate agency services, and advisory and consultancy services relating to all of the aforesaid.

16.     The Defendant's services are substantially identical and closely related to the Plaintiff's services.

17.     The HSH Nordbank mark consists solely of the Plaintiff's HSH mark in combination with the term "NORDBANK."

18.     The German term "NORDBANK" translates to "north bank", a non-protectable term which merely describes Defendant's bank in the German banking system; i.e., it is in Hamburg in the north of Germany.

19.     The HSH mark is the dominant element of the HSH Nordbank mark.

20.     Defendant has used the HSH Nordbank mark extensively in interstate commerce in promotional materials including, but not limited to, brochures, advertisements, and websites, including the www.hsh-nordbank.com web site and others.

21.     Defendant adopted and is using the HSH Nordbank mark with knowledge or reckless disregard of Plaintiff's rights in its registered HSH mark.

22.     Upon information and belief, Defendant' usage of the HSH Nordbank mark causes confusion, mistake, and has deceived members of the public into mistakenly believing that Plaintiff is the source of the Defendant's services or is sponsored or affiliated with Plaintiff.

23.     Plaintiff has experienced instances of actual consumer confusion since the Defendant's adoption of the HSH Nordbank mark.

24.     Plaintiff's attorney, on behalf of Plaintiff sent correspondence to Defendant's attorneys notifying them that usage of the HSH Nordbank mark is a violation of Plaintiff's intellectual property rights in the HSH mark and demanding that Defendant cease and desist all usage of the HSH Nordbank mark.

25.     Defendant has ignored Plaintiff's demands and has continued its usage of the HSH Nordbank mark in commerce in violation of Plaintiff's rights.

### COUNT I
### (Service Mark Infringement)

26.     Plaintiff realleges and incorporates by reference the allegations contained in paragraph 1 to 25 as if fully set forth herein.

27.     Defendant's aforementioned acts constitute service mark infringement in violation of the Lanham Act, 15 U.S.C. §1114.

28.     Plaintiff's registration of its mark "HSH" on the Principal Register is prima facie evidence of Plaintiff's exclusive right to use this mark pursuant to the Lanham Act 15 U.S.C. §1115.

29.     Defendant's usage of the HSH Nordbank mark causes confusion, mistake, and has deceived members of the public into mistakenly believing that Plaintiff is the source of Defendant's services or is sponsored or affiliated with Plaintiff.

30.     As a proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits and the strength of its HSH service mark. The injury to Plaintiff is and continues to be ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

31.     The foregoing acts of infringement have been and continue to be deliberate willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. §1117.

32.     Plaintiff is entitled to injunctive relief against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

## COUNT II
### (Federal Unfair Competition, False Designation of Origin, False Representations and False Advertising)

33.     Plaintiff realleges and incorporates by reference the allegations contained in paragraph 1 to 25 and 27-32 as if fully set forth herein.

34.     The HSH mark as used by Plaintiff in connection with the identified services is a distinct service mark that has become associated with Plaintiff and thus exclusively identifies Plaintiff's business, products, and services.

35.     Defendant's wrongful usage of the HSH Nordbank mark has led consumers to mistakenly believe that Defendant's services originate with or are sponsored or otherwise approved by Plaintiff, in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

36.     Defendant has unfairly competed with Plaintiff through the foregoing acts and has made and is making false, deceptive and/or misleading statements constituting false designation of origin, and false representations and false advertising made in connection with services distributed in interstate commerce in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

37.     Defendant's acts as set forth above have caused irreparable injury to Plaintiff's goodwill and reputation. The injury to Plaintiff is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

38.     Plaintiff is entitled to injunctive relief against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

## COUNT III
### (Federal Service Mark Dilution)

39.     Plaintiff realleges and incorporates by reference the allegations contained in paragraph 1 to 25, 27-32, and 34-38 as if fully set forth herein.

40.     Plaintiff's HSH mark is a famous service mark within the meaning of the Federal Anti-Dilution Act, 15 U.S.C. §1125(c).

8

41.     Defendant's wrongful usage of the HSH Nordbank mark dilutes and detracts from the distinctiveness of Plaintiff's famous HSH mark, with consequent damage to the Plaintiff and the business and goodwill symbolized by the HSH mark in violation of 15 U.S.C. §1125(c).

42.     Defendant's acts as set forth above, have caused irreparable injury to Plaintiff's goodwill and reputation. The injury to Plaintiff is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

43.     Plaintiff is entitled to injunctive relief against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney's fees.

## COUNT IV
### (Service Mark Infringement and Unfair Competition Under State Law)

44.     Plaintiff realleges and incorporates by reference the allegations contained in paragraph 1 to 25, 27-32, 34-38, and 40-43 as if fully set forth herein.

45.     The acts of Defendant as described above constitute service mark infringement and unfair competition in violation of Plaintiff's rights under the common law of the State of New York and N.Y. Gen. Bus. Law §360.

## COUNT V
### (Service Mark Dilution Under State Law)

46.     Plaintiff realleges and incorporates by reference the allegations contained in paragraph 1 to 25, 27-32, 34-38, 40-43 and 45 as if fully set forth herein.

47.     The acts of Defendant as described above are likely to dilute and detract from the distinctiveness of Plaintiff's famous HSH mark, with consequent damage to Plaintiff and the business

9

and goodwill symbolized by the HSH mark in violation of the New York AntiDilution Statute, N.Y. Gen. Bus. Law §360(l).

## COUNT VI
### (Cybersquatting Under The Lanham Act §43(D))

48.    Plaintiff realleges and incorporates by reference the allegations contained in paragraph 1 to 25, 27-32, 34-38, 40-43, 45 and 47 as if fully set forth herein.

49.    PAYLER's name and mark, HSH, is both distinctive and famous as those terms are defined by 15 U.S.C. § 1125.

50.    Defendant's domain name for its web site are, respectively, identical to and indistinguishable from, the name and mark, HSH, owned by PAYLER and therefore defendant's domain name, "www.hsh-nordbank.com" is confusingly similar to PAYLER's mark under 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

51.    Defendant's registration and use of the "www.hsh-nordbank.com" domain name violates the Lanham Act's Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

52.    Defendant's actions were conducted in bad faith and designed to profit from use of Plaintiff's mark.

53.    Defendant has no rights or legitimate interest in domain "www.hsh-nordbank. com" or any other domain utilizing the term HSH.

54.    Defendant has improperly diverted internet customers from Plaintiff's web site to Defendant's site.

55.    Defendant's actions harm the goodwill of Plaintiff, tarnish Plaintiff's reputation and mark, and creates a likelihood of confusion as to the source, sponsorship, affiliation and

endorsement of Plaintiff's web site.

56.    By virtue of these acts by the Defendant, PAYLER has suffered, and will continue to suffer, damages and irreparable harm unless Defendant are preliminarily and permanently enjoined by this Court from using their domain name to infringe the name and mark HSH and ordered to transfer ownership of the registrations associated with the "www.hsh-nordbank.com" domain and any other domain utilizing the term HSH name to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1.    Declare that Defendant HSH Nordbank's conduct violates Plaintiff's rights under the Lanham Act, the New York General Business Law and the New York Anti-Dilution Statute;

2.    Immediately and permanently enjoin Defendant, its officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from:

(i)    using the HSH Nordbank mark or any other mark containing the HSH mark in connection with the promotion, marketing, or advertising of goods and/or services related to the Plaintiff's services;

(ii)    diluting the HSH Mark, unfairly competing with Payler, passing off, making false representations and false advertising, or falsely designating the origin of HSH Nordbank's services and from injuring Plaintiff's goodwill in its HSH mark and reputation;

(iii)    engaging in any conduct that would lead to the mistaken belief that Defendant's services are in any way connected with, sponsored or affiliated with those of Plaintiff;

11

3.      Order that Defendant accounts to Plaintiff for Defendant's profits and any damages sustained by Plaintiff arising from the Defendant's wrongful actions;

4.      Order that the domain names www.hsh-nordbank.com and any other "HSH" derivate domains be transferred to Plaintiff;

5.      Award Plaintiff actual and/or statutory damages for Defendant's service mark infringement in an amount to be determined at trial;

6.      Award Plaintiff its costs, including reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. §1117; and

7.      Grant such other relief as is deemed just and proper in the circumstances.

CHRISTOPHER J. MCHATTIE, ESQ.

August 16, 2005

Christopher J. McHattie, Esq. (CM 8632)
Attorney for Plaintiff
46 Cherry Tree Lane
Kinnelon, NJ 07405
Telephone: (973) 492-5500
Facsimile: (973) 492-8119

Of Counsel:
Michael A. Cornman, Esq. (MC 7134)
Schweitzer Cornman Gross & Bondell LLP
292 Madison Avenue, 19th Floor
New York, NY 10017